1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

The Honorable Thomas S. Zilly

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| AARON CLAXTON, | No.  2:07-cv-00491-TSZ |
| Plaintiff, | **MOTION FOR LEAVE TO AMEND ADMISSIONS** |
| vs. | |
| THE CITY OF SEATTLE, a Municipal Corporation; SEATTLE POLICE DEPARTMENT; and SEATTLE POLICE OFFICER DYMENT; and SEATTLE POLICE OFFICER SAUSMAN, | NOTE ON MOTION CALENDAR: Tuesday, February 19, 2008 |
| Defendants. | |

17

18

19

### I.     RELIEF REQUESTED

Plaintiff brings this motion for relief from a deadline pursuant to CR 7(d)(2)(A) and

moves the Court for leave to amend his admissions pursuant to Fed. R. Civ. P 36(b).

20

21

22

23

24

### II.     STATEMENT OF FACTS

On September 12, 2007 defendant City of Seattle served plaintiff with a set of requests

for admission.  *See Exhibit A* to Howell Declaration.  Through inadvertence, plaintiff did not

serve defendant with his answers to the requests for admission until October 22, 2007, forty days

after receiving the requests.  *See Exhibit B* to Howell Declaration.  Plaintiff denied all but two of

MOTION FOR LEAVE TO AMEND ADMISSIONS
NO. 2:07-cv-00491-TSZ PAGE 1

Law Offices of
Lembhard G. Howell, P.S.
Pacific Building, Suite 2105
Seattle, Washington 98104
(206) 623-5296

1   the sixteen requests for admission.  *Id.*  The defendants took the plaintiff's deposition over a

2   month later on November 26, 2007.  The defendants deposed the plaintiff's father and mother on

3   November 27, 2007.  The defendants deposed eyewitness Leroy Gibbs on November 29, 2007.

4          The discovery cutoff date was December 10, 2007.  The trial date is April 7, 2008.

5          Defendants have filed a motion for summary judgment wherein they consider all of the

6   requests for admission admitted.  The admissions upon which defendants rely are contrary to

7   plaintiff's answers to the requests for admission and contrary to his testimony at his deposition.

8   In particular, defendants rely upon Requests for Admission Nos. 1, 2, 7-10, and 15-16.

9          **Request for Admission No. 1:**

10         Your Complaint in part states, "On their way home, Plaintiff and his
           cousin had just made a left turn off of Lake City Way North onto 135th St.
11         N.E. heading west, then a right on 32nd Avenue and a left onto 143rd St.
           N.E. heading towards 30th Avenue[.]" Admit that the vehicle you were
12         driving was, at times, exceeding the posted speed limit during that travel.

13         **RESPONSE**: Deny.

14         **Deposition Testimony:**

15         p. 38
           15    Q.   And how do you know what speed you were going
16         16   during the different roads that we just discussed during
           17   this trip from the basketball park to your home?
17         18    A.   Well, I did give you a not -- like a not faster
           19   than this amount.  You know, so I know I wasn't going
18         20   faster than what I -- than 25 on some of those or 20 on
           21   some of those, and then on the last one, on 143rd Place, I
19         22   know I wasn't going faster than ten miles an hour.
           23    Q.   My question is, how do you know that?
20         24    A.   Just because in the amount of time or in the
           25   distance that was covered, that I covered, there was no
21
           p. 39
22          1   need for me to go faster than that speed.  That's the
            2   speed I always go on that street right by my house.  There
23          3   would be no need for me to go faster than that.
            4    Q.   So your testimony is you think you went these
24          5   speeds because that's the speed you usually go on those

MOTION FOR LEAVE TO AMEND ADMISSIONS
NO. 2:07-cv-00491-TSZ PAGE 2

6  roads?
7    A.  I know I was going -- I know I was going that
8  speed.
9    Q.  But my question is, how do you know that?  Did
10  you monitor the speedometer the entire time you were
11  driving?  Did you --
12    A.  Not the entire time, no.  I didn't monitor it
13  the entire time.
. . .
18    Q.  At any point did you notice that you were
19  driving above the speed limit and then tried to slow down?
20    A.  No.

*See Exhibit C* to Howell Declaration at p. 38, ln. 15 – p. 39, ln. 20.

**Request for Admission No. 2:**

Your Complaint in part states, "During their approach to 30th Avenue while ascending a slight hill, they slowed down and then stopped behind a car that was waiting at the stop sign at the top of the hill on the corner of 143rd St. N.E. and 30th Avenue[.]"  Admit that the vehicle you were driving failed to stop completely for a stop sign at the intersection of 30th AVE NE and NE 143rd ST.

**RESPONSE**: Deny.

**Deposition Testimony:**

p. 41
2    Q.  Did you stop at all of those stop signs?
3    A.  Yes.
4    Q.  And did you -- are you quite certain you didn't
5  do any type of California stop?
6    A.  I couldn't have, there was a car in front of me.
7    Q.  The entire trip?
8    A.  No.  I'm sorry.  When I came up to the stop sign
9  on 143rd Street, at that stop sign at the top of the hill.
10    Q.  What about on the other stop signs that you were
11  referring to, are you certain you made a complete stop at
12  every single stop sign that you've described?
13    A.  Yes.  Yes.  There was only -- yeah.

*See Exhibit C* to Howell Declaration at p. 41, ll. 2-13.

/ / /

MOTION FOR LEAVE TO AMEND ADMISSIONS
NO. 2:07-cv-00491-TSZ PAGE 3

Law Offices of
Lembhard G. Howell, P.S.
Pacific Building, Suite 2105
Seattle, Washington 98104
(206) 623-5296

1

**Request for Admission Nos. 7 and 8:**

2

(7) In your Complaint you allege you saw four men with guns pointed at
you during the August 27, 2006 incident alleged in your Complaint.

3

Admit at least one of these men verbally indicated he was law
enforcement.

4

RESPONSE: Admit.  At least one of these men verbally indicated he was

5

law enforcement only after the men tasered plaintiff.

6

(8) In your Complaint, you allege you saw four Seattle Police officers
entering the garage in a straight line.  Admit at least one of those men

7

issued oral commands to the effect that you were to stop moving.

8

**RESPONSE**: Deny.

9

**Deposition Testimony:**

10

p. 59
2    Q.  And then you continued into the garage and

11

3   started -- and went to the left to go into the door
4   between the garage and the house, and it's at that point

12

5   when you noticed the four men coming in the line -- or the
6   four people coming down in the line?

13

7    A.  Yes.
8    Q.  Okay.  With their weapons drawn?

14

9    A.  (Moves head up and down.)
10   Q.  Did you hear anything?

15

11   A.  No.
. . .

16

22   Q.  Okay.  Leroy was in the door frame and you were
23  just on the outside of the door frame still in the garage?

17

24   A.  Yes.
25   Q.  Okay.  And you didn't hear anything at that

18

p. 60
1  point?

19

2    A.  Hear anything, like...
3    Q.  Anything from the four individuals.  Were they

20

4  speaking?
5      Irrespective of whether you could discern the

21

6  words, did you hear any noises coming from their
7  direction?

22

8    A.  No.
. . .

23

p. 64
12   Q.  Okay.  What about the four individuals, do you

24

13  know whether they were saying anything, irrespective of

MOTION FOR LEAVE TO AMEND ADMISSIONS
NO. 2:07-cv-00491-TSZ PAGE 4

Law Offices of
Lembhard G. Howell, P.S.
Pacific Building, Suite 2105
Seattle, Washington 98104
(206) 623-5296

14   whether you could register what the words were?
15      A.   No.
16      Q.   No, you don't know whether they were saying
17   anything, or no, they weren't saying anything?
18      A.   Right.  You mean even if I don't understand if
19   they were saying anything?
20      Q.   No.  Could you hear -- you know, I would imagine
21   you're probably scared, because I would be.
22      A.   Yeah.
23      Q.   And I imagine you'd be focusing on the guns.
24         So my question is, is it possible that there
25   was -- that they were saying that you maybe just didn't
p. 65
 1   register?
 2      A.   I don't know.
 3      Q.   You don't know one way or the other?
 4      A.   No.
 5      Q.   But you can't say that they weren't saying
 6   things?
 7      A.   Right.
. . .
p. 74
 1      Q.   Okay.  During that time frame, did you hear any
 2   words between the time you were tased the second time and
 3   the time that you were on the ground in your bedroom?
 4      A.   Yeah.  Yeah.
 5      Q.   What words did you hear?
 6      A.   I heard -- I was -- I believe I was speaking,
 7   too.  I might I have said something.  I heard, "Roll over
 8   or I'll taser you again.  Roll over.  Roll over.  Police.
 9   Roll over."  And then that's when I -- when I heard them
10   yell, "Police," that's when I was like -- I yelled out,
11   "What happened?  What am I doing?  What did I do wrong.  I
12   haven't done anything wrong.  This is my house.  This is
13   my house."  And then I saw Roy laying there on the ground
14   with the cops on top of him.

See *Exhibit C* to Howell Declaration at p. 59, ln. 2 – p. 65, ln. 7 and p. 74, ll. 1-14.

**Request for Admission No. 9:**

Admit that you did not stop as ordered until an officer administered the Taser.

**RESPONSE**: Deny.  Plaintiff was standing still when he was tasered.

/ / /

MOTION FOR LEAVE TO AMEND ADMISSIONS
NO. 2:07-cv-00491-TSZ PAGE 5

Law Offices of
Lembhard G. Howell, P.S.
Pacific Building, Suite 2105
Seattle, Washington 98104
(206) 623-5296

1    **Deposition Testimony:**

2         p. 62
          20     Q.   I was just asking you, you had turned, you saw
3         21   the officers, you didn't say anything, and you turned and
          22   you froze with your hands up facing the four individuals?
4         23     A.   Correct.
          . . .
5         p. 63
          . . .
6         12     Q.   All right.  What happened next?
          13     A.   Less -- I would say two, three, four at the max,
7         14   in terms of seconds, after I put my hands up, I got
          15   tasered.
8
   *See Exhibit C* to Howell Declaration at p. 62, ln. 20 – p. 63, ln. 15.
9
       **Request for Admission No. 10:**
10
          Admit during the August 27, 2006 incident alleged in your complaint, the
11        four men you refer to had identifiable "POLICE," "SEATTLE POLICE,"
          or related markings on or affixed to their clothing.
12
          **RESPONSE**: Deny.
13
       **Deposition Testimony:**
14
          p. 54
15        25     Q.   Okay.  Did you see anything like on their left
          p. 55
16         1   shoulder or above their -- on the left side of their
           2   chest, right here (indicating), anything on what they were
17         3   wearing?
           4     A.   Like while this was going on, while they were
18         5   still in line with their guns drawn at me, or at all?
           6     Q.   At all.
19         7     A.   Right here (indicating), no.  I didn't see
           8   anything right here (indicating).
20         . . .
          17     Q.   I said, "Did you ever see anything on what they
21        18   were wearing," and you said, "At that time or later," and
          19   I said, "Later," which to me indicates that, and tell me
22        20   if I'm wrong, that you came to realize later that there
          21   was something.
23        22     A.   Yeah, on the back.  On the back of their shirt,
          23   shirt or -- I'm pretty sure it wasn't a vest.  I'm sure
24        24   they were wearing shirts.  Yeah, on the back of their

MOTION FOR LEAVE TO AMEND ADMISSIONS
NO. 2:07-cv-00491-TSZ PAGE 6

25   shirts.
p. 56
1      Q.   What did you see on the back of their shirt?
2      A.   I don't know about all of them, but I know on
3   one of them, I don't know if it was him for sure, if it
4   was on the back of his shirt, but it did say "police."
5      Q.   When you say "him," were you referring to
6   Sergeant Dyment here?
7      A.   Yeah, I'm not sure if it was actually him or
8   not.
9      Q.   Okay.  Did you see anything on any part of the
10   clothing that said "police" at any point in time during
11   the evening?
12      A.   No.

*See Exhibit C* to Howell Declaration at p. 54, ln. 25 – p. 56, ln. 12.

**Request for Admission No. 15:**

Admit you have no documentation to support the allegations in your Complaint of severe infliction of emotional distress.

**RESPONSE**: Deny.

**Deposition Testimony:**

p. 120
1      Q.   Have you seen any sort of counselor,
2   psychiatrist, anyone along the mental health -- in the
3   mental health profession concerning your feelings as a
4   result of the incident?
5      A.   Other than Dr. Crocker is what you're saying?
6         Just Dr. Crocker.
7      Q.   Just Dr. Crocker?
8      A.   Yeah.
9      Q.   Is Dr. Crocker a mental health professional or a
10   general practitioner for physical health?
11      A.   I would say both.

*See Exhibit C* to Howell Declaration at p. 120, ll. 1-11.

Plaintiff stipulated to the collection of Dr. Crocker's records and the same were produced to defendants.  *See Exhibit D* to Howell Declaration.

/ / /

MOTION FOR LEAVE TO AMEND ADMISSIONS
NO. 2:07-cv-00491-TSZ PAGE 7

1

**Request for Admission No. 16:**

2

> Admit you have no evidence that any of the defendant officers interfered
> with the prosecutor's judgment with respect to whether to pursue the
> citations issued on August 27, 2006 against Aaron Claxton.

3

4

**RESPONSE**: Deny.

5

Defendant Sausman gave a written statement regarding the incident that contains
information contrary to the facts, i.e. that plaintiff failed to stop at a stop sign, drove at a high
rate of speed, ran from police, and failed to follow the officers' commands.  *See Exhibit E* to
Howell Declaration.

6

7

### III.    ISSUE PRESENTED

8

Whether the Court should grant plaintiff leave to withdraw and/or amend his admissions

9

when presentation of the merits of the action must be subserved and defendants will not be

10

prejudiced by the withdrawal and/or amendment.

11

### IV.    EVIDENCE RELIED UPON

12

The Declaration of Lembhard G. Howell with exhibits and the records and files herein.

13

### V.    AUTHORITY

14

FRCP 36(b) provides that the Court, on motion, may permit withdrawal or amendment of

15

admissions.

16

> …the court may permit withdrawal or amendment when the presentation of the
> merits of the action will be subserved thereby and the party who obtained the
> admission fails to satisfy the court that withdrawal or amendment will prejudice
> that party in maintaining the action or defense on the merits…

17

18

19

FRCP 36(b).  "The party who obtained the admission has the burden of proving that allowing

20

withdrawal of the admission would prejudice its case."  *Sonoda v. Cabrera*, 255 F.3d 1035, 1039

21

(9th Cir. 2001) (*citing Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)).  "The

22

prejudice contemplated by 36(b) is not simply that the party who obtained the admission will

23

now have to convince the factfinder of the truth; rather, it relates to the difficulty a party may

24

MOTION FOR LEAVE TO AMEND ADMISSIONS
NO. 2:07-cv-00491-TSZ PAGE 8

Law Offices of
Lembhard G. Howell, P.S.
Pacific Building, Suite 2105
Seattle, Washington 98104
(206) 623-5296

1    face in proving its case, for example by the unavailability of key witnesses in light of the delay."

2    *Sonoda* at 1039.

3          The presentation of the merits of this action will be subserved by withdrawal of the

4    admissions.  Much of the defendants' defense depends upon their contention that the defendant

5    police officers had probable cause to stop plaintiff for alleged traffic violations and to then arrest

6    him for obstruction.  Defendants rely on requests for admission that plaintiff had been speeding,

7    that he ran one or more stop signs, that at least one officer verbally indicated that he was law

8    enforcement, that the officers' clothing indicated they were law enforcement, that plaintiff

9    recognized the officers as law enforcement, that plaintiff was ordered to quit moving, that

10   plaintiff failed to obey police commands until a taser was applied, that plaintiff has no

11   documentation to establish severe emotional distress, and that plaintiff has no evidence that the

12   officers interfered with the prosecutor's judgment as to whether to pursue the charges against

13   him.  *See* Requests for Admission Nos. 1, 2, 7-10, 15-16; Defendants' Motion for Summary

14   Judgment at pp. 7-8.

15         Plaintiff testified at his deposition that he did not speed and that he did not run a stop sign

16   while driving to his home.  Plaintiff testified that he did not hear a siren or see flashing lights on

17   the officers' vehicle.  Plaintiff testified that he did not notice anything on the officers' clothing

18   that indicated that they were police officers, he did not hear the officers identify themselves as

19   police officers when they approached him, and he did not move immediately prior to being

20   tasered.  *See Part II, supra.*

21         The defendants will not be prejudiced by withdrawal of the admissions.  The defendants

22   took plaintiff's deposition, eyewitness Leroy Gibbs' deposition, and plaintiffs' parents'

23   depositions over a month after receiving plaintiff's responses to the requests for admission.  The

24   officers' depositions were taken by plaintiff in early December 2007.  The defendants received

MOTION FOR LEAVE TO AMEND ADMISSIONS
NO. 2:07-cv-00491-TSZ PAGE 9

1  plaintiff's responses 50 days prior to the discovery cutoff.  Trial is still 2 months away.  The

2  evidence the defendants can present in an attempt to prove their defense comes from the

3  testimony of the officers and documentary evidence that is in their possession.  There are no

4  unavailable witnesses and the defendants have ample time to prepare their defense.  Defendants

5  cannot show that a 10 day delay in receiving plaintiff's responses to the requests for admission

6  prejudiced them in any way.

7
## VI.    CONCLUSION
8
       For the foregoing reasons, plaintiff requests that the Court grant plaintiff's motion for
9
leave to amend admissions and consider plaintiff's responses dated October 22, 2007 to be
10
controlling.
11
                                    Respectfully submitted,
12
                                    LAW OFFICES OF LEMBHARD G. HOWELL, P.S.
13

14                                   /s/ Lembhard G. Howell_____
                                    Lembhard G. Howell, WSBA #133
15                                   Attorney for Plaintiff

16

17

18

19

20

21

22

23

24

MOTION FOR LEAVE TO AMEND ADMISSIONS
NO. 2:07-cv-00491-TSZ PAGE 10

Law Offices of
Lembhard G. Howell, P.S.
Pacific Building, Suite 2105
Seattle, Washington 98104
(206) 623-5296